The plaintiff corporation in this action is seeking a temporary injunction to restrain the defendants from causing and directing "large and unreasonable numbers of persons to congregate and remain on the public pavement and highway directly in front of the plaintiff's premises . . . in interference with the conduct of the business" and preventing employees, "customers and suppliers of the plaintiff, and other persons, all having a legal right to enter . . . for the purpose of working for, . . . placing orders with, . . . [or] furnishing services and transacting other legitimate business," from entering the premises.
The case involves a labor dispute within the meaning of § 1420e of the 1939 Cumulative Supplement to the General Statutes. The people on the picket line are all employees of the plaintiff or are members of the union which is the authorized collective bargaining agent for the plaintiff's employees. It was admitted that a strike was in progress over wages and that the strike involved employees of the plaintiff and members of the union. *Page 24 
The issue in the case involves the right of the defendants herein to picket peacefully in front of the premises of their employer.
It appeared from the evidence that when the strike first started all persons were refused admission to the plant. This was accomplished by pickets standing directly in the driveway and refusing to get out of the way when cars attempted to enter, by pickets walking shoulder to shoulder so that it was impossible to get through the picket line, by circular picketing, which required persons in effect to go through four picket lines, and by mass picketing.
Defendants contend that under our law the court is powerless to restrain picketing as long as there is no evidence of violence and the picketing is peaceful.
The Injunctions in Labor Disputes Act passed in 1939, §§ 1420e-1428e, Cum. Sup. 1939, restricts injunctive relief, in so far as it applies to this particular case, from preventing a person or persons "(d) by all lawful means aiding any person participating or interested in any labor dispute . . .; (e) giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking or patrolling or by any other lawful method; (f) assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; . . . (i) advising or urging or otherwise causing or inducing by any lawful method the acts hereinbefore specified."
The right of the plaintiff to relief does not depend upon any new rights conferred by this statute. The effect of the statute is merely to curtail the jurisdiction of the court in the issuance of injunctions in labor disputes under certain specified conditions. Unless the conditions set out in these sections exist there is no limitation on the general equitable jurisdiction which this court has always had. The purpose of such legislation is to protect labor from the abuses of unrestrained issuance of injunctions in industrial controversies and in no way does it render lawful any acts which before its enactment were unlawful. It is simply a mandate to courts of equity not to grant injunctive relief in labor disputes unless there is involved fraud, coercion, violence or other unlawful conduct.
The question now is whether the actions and conduct of the defendants amounted to peaceful picketing or was unlawful conduct. *Page 25 
In the furtherance of a lawful strike the strikers may use peaceful persuasion to induce other workmen to join them in the strike. Restatement, 4 Torts, § 779, comment f, has tabulated some of the several functions performed by picketing in the following language: "Pickets stationed at the place of business involved in the dispute may observe it to see the extent of operations and the persons who come there for business. They may also, by word of mouth, or signs or placards, seek to dissuade workers and others from entering the plant for purposes of business or from otherwise doing business with the employer. their mere presence at the plant may be sufficient notice to persons interested that the plant is involved in a labor dispute. Picketing may also be a means of maintaining the morale of the workers involved in the dispute, and of exhibiting to others their unity and determination. Rumors that the workers' morale is weakening, that their ranks are suffering serious defections, and that the strike is being abandoned in favor of a return to work may bring defeat to the workers' cause and are sometimes circulated for that very purpose. Picketing may dispel such rumors."
The term "peaceful picketing" implies not only the absence of violence but the absence of any unlawful act. It authorizes picketing which does not interfere with the person or property of another by the unlawful use of force, violence, intimidation or threats. It precludes any form of physical obstruction or interference with an employer's business or the misrepresentation of the facts of the controversy, and it should not go beyond the area of peaceful persuasion.
The boundary between lawful and unlawful conduct is that between peaceful persuasion and intimidation. The claim of the defendants that intimidation or coercion cannot be found to exist in the absence of actual physical violence or express threats of physical injury to person or property is not well founded and is not in accord with our law.
In the case of Levy Devaney, Inc. v. International PocketbookWorkers Union, 114 Conn. 319, groups of strikers, varying from six to twenty in number, gathered about the plant, and as the employees were going to and from work they received black and threatening looks from them; some were followed to and from work and others required a police escort; even though no physical violence was used, this court in the following language held (p. 322) that the conduct of the defendants was *Page 26 
such as to constitute intimidation and coercion: "To intimidate is to inspire with fear, to overawe or make afraid. Fear may be inspired without physical violence or spoken threats, moral intimidation may be accomplished by a menacing attitude and a display of force which may coerce the will as effectually as actual physical violence. The gathering of strikers in considerable numbers at the entrance of a factory with threatening attitude toward employees, who must run the gauntlet of a hostile picket line in going to and from work, may overawe and make them afraid by a show of force which itself is intimidating. The well considered authorities all hold that the conduct of a strike may be such as to constitute intimidation though there is no use of force or physical violence."
The legality of picketing in each case depends upon its purpose and the conduct of the pickets. Picketing becomes unlawful if it goes beyond the allowable area of peaceful persuasion and assumes the form of intimidation threats or violence, impedes traffic to a place of business, or interferes with the free use of property. As to the number of pickets who may be employed in any particular picket line, there is no rule fixing the number at a definite figure. Each case must be judged upon its own particular set of facts. Restatement, 4 Torts, § 779, comment h, summarizes the problem in the following language: "The question is in each case whether the number of pickets plus the attendant circumstances are such that fear of physical harm rather than persuasion is the force loosed upon the persons sought to be influenced. Thus it is important to consider the kind of place picketed and the character of persons sought to be influenced, that is, for example, whether the place picketed is a foundry approached only by men or a department store patronized chiefly by women. It is important also to consider the character of the pickets, whether they are, for example, shy women or rough men. And it is important to consider the conduct of the pickets: whether they behave in a quiet, orderly manner or are boisterous and equipped with weapons of physical harm; whether they obstruct access to the place picketed so as to make ingress or egress difficult or do not interfere with it at all. Other factors may also be important, as, for example, the presence or absence of private guards or public police and the extent of protection afforded by them. In some circumstances, [then], picketing may be a form of peaceful persuasion though the number of pickets is large; in others, the picketing may not be fair persuasion though the number is small." *Page 27 
Thus, a picket line surrounding a plant to prevent its operation by others who are willing to work upon the terms named by its owners and which prevents the free ingress and egress to and from the plant by those who had such a right is unlawful.American Steel Foundries v. Tri-City Central TradesCouncil, 257 U.S. 184; Remington Rand, Inc. v. Crofoot248 App. Div. (N. Y.) 356.
Picketing is unlawful where a line of twenty-five men march up and down in front of a picketed place of business in very close formation and thereby obstruct access to the business, or where a large crowd gathers in mass formation, or the entrance to the business is obstructed by parading around in a circle.Eastwood-Nealley Corporation v. International Assn., 124 N.J. Eq. 274;Goldfinger v. Feintuch 276 N.Y. 281; Knapp-MonarchCo. v. Anderson, 7 F. Sup. 332.
In the present case the conduct of the pickets in preventing workers and those having business with the plaintiff from entering the plant and in picketing in close formation and within circles to prevent such entry exceeded the bounds of peaceful picketing, and such action was not "lawful" conduct within the meaning of the term in the statute.
Since the commencement of the action, however, and during the trial of the case it appears that there has been no interference with those seeking to enter the plant, and the picket line has been carried on in a peaceable manner. While the number of persons picketing varies, depending upon the hour, there is evidence that they are patrolling sufficiently far apart to allow those desiring to cross the picket line to do so. Whether this change in procedure is dictated by a desire to impress the court in view of the defendants' claim that the strike was not properly organized at first or comes as the result of some sound legal advice given them, only their future conduct will tell.
An action for an injunction being equitable, whether or not a plaintiff is entitled to relief is determined, not by the situation existing when it is begun, but by that which is developed at the trial. Loew's Enterprises, Inc., v. International Alliance of T.S.E., 127 Conn. 415, 419.
It is a preventive remedy and not punishment for past conduct. *Page 28 
In view of the evidence, during the trial, of the manner in which the picketing is now being conducted, the court is not called upon to pass upon the question of the responsibility of the officers and the unions involved for the unlawful acts. In view of the above, they are now put on notice as to the extent to which picketing may go, and it is reasonable to assume that they will continue to stay within the law. In any event there is no reasonable foundation in the evidence for the belief that the prior unlawful conduct will be resumed. In the event that it is, the plaintiff may apply for further relief.
 The motion for a temporary injunction is denied, without prejudice.